IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

JEREMY CRESPIN                          §
(TDCJ No. 1807429),                     §
                                        §
            Petitioner,                 §
                                        §
V.                                      §            No. 3:15-cv-818-D-BN
                                        §
LORIE DAVIS, Director                   §
Texas Department of Criminal Justice    §
Correctional Institutions Division,     §
                                        §
            Respondent.                 §

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Petitioner Jeremy Crespin, a Texas inmate, proceeding *pro se*, has filed an

application for writ of habeas corpus under 28 U.S.C. § 2254, *see* Dkt. No. 1, which,

with leave of the Court, has been amended, *see* Dkt. Nos. 20, 30, & 46, and

supplemented, *see* Dkt. Nos. 38, 47, 53, 55, & 56. For the reasons explained below, the

Court should deny the application as amended and supplemented because the claims

Crespin asserts are either time-barred, procedurally barred, or meritless.

**Applicable Background**

Crespin currently is incarcerated under two state convictions – aggravated

sexual assault of a child younger than 14 years of age, *see State v. Crespin*, F08-16205

(363d Jud. Dist. Ct., Dallas Cty., Tex.), and indecency with a child under 17 years of

age, *see State v. Crespin*, F08-16204 (363d Jud. Dist. Ct., Dallas Cty., Tex.).

In June 2010, Crespin pleaded guilty to both offenses. And, "[p]ursuant to plea agreements, the trial court deferred adjudicating guilt, placed Crespin on five years' community supervision, and assessed fines." *Crespin v. State*, Nos. 05-10-00784-CR & 05-10-00785-CR, 2011 WL 693266 (Tex. App. – Dallas Feb. 18, 2011, no pet.) (affirming both judgments).

> The State later moved to adjudicate guilt, alleging in an amended motion that appellant violated the conditions of his community supervision by: (1) failing to register as a sex offender; (2) committing a theft of a motor vehicle offense; (3) failing to report; (4) failing to give twenty-four hours' notice of any change in home address; (5) traveling outside of Dallas County without permission; and (6) failing to pay costs and fines. Appellant pleaded not true to the allegations in a hearing on the motions.

> During the adjudication hearing, at the State's request, the trial court took judicial notice of the entire contents of the court's file, specifically noting the following: (1) the order suspending adjudication of guilt and placing appellant on community supervision on June 15, 2010; (2) the terms and conditions of community supervision signed by appellant on June 15, 2010; (3) the sex offender admonitions signed by appellant on June 15, 2010; (4) page 6 of a certified copy of the transcript from that proceeding where the judge specifically denied appellant's request to suspend him having to register as a sex offender while he was appealing the specific point of registration; and (5) that the mandate in that appeal was affirmed and received by the trial court on July 2, 2011.

> Regarding the registration allegation, Garland police detective Brian Younger testified appellant came to his office to register on September 14, 2010. Appellant was initially told to register annually due to a discrepancy in the initial paperwork sent to the police department. On May 10, 2011, Younger explained to appellant in person that due to the nature of his offenses, he was required to register his address every ninety days. At that time, appellant signed a document acknowledging he understood the ninety-day registration requirement. Younger testified he gave appellant a card that stated his next registration date was August 9, 2011. Appellant did not show up on that date. Instead, he left a telephone message and asked to reschedule the time to register. Younger rescheduled the registration appointment time for August 16, 2011. Appellant did not show up on August 16, 2011. Appellant did call

Younger on August 16th and asked for more time because he "had a warrant out for his arrest." Younger gave appellant another week and a half to get in touch with Younger, but he never heard from appellant again.

Appellant testified that he was given instructions on the sex offender registration requirements when he was placed on community supervision, and he understood the requirement to register his address every ninety days when he spoke with Younger on May 10, 2011. Appellant said he was "in and out of jail" and could not make the appointments, but he always tried to call to reschedule.

The trial court also heard testimony from several witnesses concerning the theft allegation. The trial court found all of the allegations true and adjudicated appellant guilty in each case. The court sentenced appellant to fifty years' imprisonment in the aggravated sexual assault of a child case and twenty years' imprisonment in the indecency with a child case.

*Crespin v. State*, Nos. 05-12-01352-CR & 05-12-01381-CR, 2013 WL 1277871, at *1-*2 (Tex. App. – Dallas Feb. 27, 2013).

The Texas Court of Criminal Appeals (the "CCA") refused Crespin's petitions for discretionary review ("PDR"). *See Crespin v. State*, PD-0290-13 & PD-0291-13 (Tex. Crim. App. July 24, 2013). The CCA ultimately denied his state habeas applications without written order on the trial court's findings without a hearing. *See Ex parte Crespin*, WR-82,141-03, -04 (Tex. Crim. App. Feb. 25, 2015). And the Supreme Court of the United States denied Crepin's petition for writ of certiorari. *See Crespin v. Texas*, 136 S. Ct. 359 (U.S. Oct. 19, 2015).

Crespin raises eleven claims in this proceeding. The first eight concern the deferred adjudication order. And Claims 9, 10, and 11 concern the revocation of his community supervision, the adjudication order, and the appeal of that order. The

undersigned will address the claims by the order and related proceeding they challenge.

## Legal Standards and Analysis

<u>Deferred adjudication order [Claims 1-8]</u>

Crespin first claims that the judgments resulting from his pleading guilty and the court's deferring adjudicating his guilty and placing him on community supervision are void because the transfer of those cases from juvenile to district court violated due process. He further claims that those judgments violated the Ex Post Facto Clause because, in 1997, some three years after the underlying offenses occurred, the Texas Legislature amended the statute of limitations on prosecutions from ten years after the date of the offense to ten years after the complainant turns 18. And he presents six claims concerning the alleged constitutional ineffectiveness of his attorney during those proceedings.

The Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA") establishes a one-year statute of limitations for federal habeas proceedings brought under 28 U.S.C. § 2254. *See* ANTITERRORISM AND EFFECTIVE DEATH PENALTY ACT OF 1996, Pub. L. 104-132, 110 Stat. 1214 (1996). The limitations period runs from the latest of:

(A)    the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B)    the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C)     the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D)     the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

Applicable to the posture of the pertinent state criminal proceedings discussed above,

> [u]nder Texas law, "a judge may defer the adjudication of guilt of particular defendants and place them on 'community supervision' if they plead guilty or *nolo contendere*." *Tharpe v. Thaler*, 628 F.3d 719, 722 (5th Cir. 2010) (citing TEX. CODE CRIM. P. art. 42.12, § 5(a)). If the defendant violates a condition of his community supervision, the court holds a hearing to determine whether it should impose a judgment of guilt. *Id.* If the court convicts the defendant, it also sentences him. *Id.* Two distinct limitations periods then apply for the filing of habeas petitions. One limitations period applies to claims relating to the deferred adjudication order, and another limitations period applies to claims relating to the adjudication of guilt. *Id.* at 724; *see also Caldwell v. Dretke*, 429 F.3d 521, 526-30 (5th Cir. 2005).

*Frey v. Stephens*, 616 F. App'x 704, 707 (5th Cir. 2015); *see also Caldwell*, 429 F.3d at 530 ("Because an order of deferred adjudication community supervision is a final judgment within the plain meaning of AEDPA section 2244, the one-year statute of limitations, for challenging substantive issues of [an order] of deferred adjudication, [begins] to run when the order deferring adjudication [becomes] final."); *Tharpe*, 628 F.3d at 724 (holding that "a habeas claim that challenges a *deferred-adjudication order* and another habeas claim that challenges a *conviction and sentence* involve two

different 'judgments' for AEDPA purposes" and "in dealing with two entirely separate and distinct judgments – one a deferred-adjudication order and the other a judgment of conviction and sentence – [federal courts] are dealing with two separate and distinct limitation periods under the AEDPA" (distinguishing *Burton v. Stewart*, 549 U.S. 147 (2007); emphasis in original)).

The time during which a properly filed application for state post-conviction or other collateral review is pending is excluded from the limitations period. *See id.* § 2244(d)(2). The one-year limitations period is also subject to equitable tolling in "rare and exceptional circumstances." *See, e.g.*, *United States v. Riggs*, 314 F.3d 796, 800 n.9 (5th Cir. 2002) (citing *Davis v. Johnson*, 158 F.3d 806, 811 (5th Cir. 1998)).

> "Equitable tolling applies principally where the plaintiff is actively misled by the defendant about the cause of action or is prevented in some extraordinary way from asserting his rights." *Coleman v. Johnson*, 184 F.3d 398, 402 (5th Cir. 1999) (internal quotation marks and citation omitted). "[T]he principles of equitable tolling ... do not extend to what is at best a garden variety claim of excusable neglect." *Irwin v. Department of Veterans Affairs*, 498 U.S. 89, 96 (1990). Unfamiliarity with the legal process does not justify equitable tolling. *Turner v. Johnson*, 177 F.3d 390, 392 (5th Cir. 1999).

*United States v. Kirkham*, 367 F. App'x 539, 541 (5th Cir. 2010) (per curiam).

But "a litigant is entitled to equitable tolling of a statute of limitations only if the litigant establishes two elements: '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing.'" *Menominee Indian Tribe of Wis. v. United States*, 136 S. Ct. 750, 755 (2016) (quoting *Holland v. Florida*, 560 U.S. 631, 649 (2010)). The Supreme

-6-

Court of the United States has reaffirmed "that the second prong of the equitable tolling test is met only where the circumstances that caused a litigant's delay are both extraordinary *and* beyond its control." *Id.* at 756 (emphasis in original).

The Supreme Court also has determined that the AEDPA's statute of limitations can be overcome by a showing of "actual innocence." *See McQuiggin v. Perkins*, 133 S. Ct. 1924, 1928 (2013). But the actual innocence gateway is only available to a petitioner who presents "'evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error.'" *Id.* at 1936 (quoting *Schlup v. Delo*, 513 U.S. 298, 316 (1995)). That is, the new, reliable evidence must be sufficient to persuade the Court that "'no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'" *Id.* at 1928 (quoting *Schlup*, 513 U.S. at 329); *see also Johnson v. Hargett*, 978 F.2d 855, 859-60 (5th Cir. 1992) ("The Supreme Court has made clear that the term 'actual innocence' means *factual*, as opposed to *legal*, innocence – 'legal' innocence, of course, would arise whenever a constitutional violation by itself requires reversal, whereas 'actual' innocence, as the Court stated in *McCleskey [v. Zant*, 499 U.S. 467 (1991)], means that the person did not commit the crime." (footnotes omitted; emphasis in original)).

The eight claims outlined above – either attacking the validity of the judgments or the performance of counsel leading up to those judgments – all relate "to the deferred adjudication order." *Frey*, 616 F. App'x at 707; *see United States v. Mills*, 843

F.3d 210, 216-17 (5th Cir. 2016) ("[U]nder Texas law, deferred adjudications are immediately appealable upon entry of the initial order, triggering the 30-day limitations period for filing a notice of appeal. In fact, a defendant subject to a deferred adjudication may *only* appeal issues related to the original plea proceedings – including sufficiency of the evidence – when the deferred adjudication is originally imposed, not upon revocation." (respectively citing *United States v. Vasquez*, 298 F.3d 354, 358-59 (5th Cir. 2002); *Manuel v. State*, 994 S.W.2d 658, 661-62 (Tex. Crim. App. 1999)); emphasis in original).[1]

Indeed, here, Crespin filed a direct appeal. *See generally Crespin*, 2011 WL 693266. And, because Crespin failed to file a PDR after the judgments were affirmed – even after seeking and obtaining an extension of time to do so, *see Crespin v. State*, PD-0399-11 (Tex. Crim. App.) – the deferred adjudication order became final for federal limitations purposes "upon the expiration of the time for seeking further review through the filing of a PDR," *Phillips v. Quarterman*, No. 3:09-cv-1131-B, 2009 WL 1974302, at *2 (N.D. Tex. July 7, 2009) (citing *Roberts v. Cockrell*, 319 F.3d 690, 692

---

[1] *See also Jenkins v. Thaler*, No. 4:12-cv-797-A, 2013 WL 867529, at *2 (N.D. Tex. Mar. 7, 2013) ("Because petitioner's claims relate to facts and events involving the original plea proceedings, the judgment placing him on deferred adjudication community supervision is the relevant judgment for purposes of the one-year statute of limitations." (citing *Tharpe*, 628 F.3d at 724)); *York v. Stephens*, No. A-13-CA-100-LY, 2014 WL 2168216, at *3 (W.D. Tex. May 23, 2014) (claims are "related to the validity of the original guilty plea" if they turn on a contention that a petitioner "did not actually commit" the crime; such "claims had to be raised in a direct appeal within thirty days of when [p]etitioner received deferred-adjudication community supervision"; and such claims may not be rephrased as a challenge to findings made at conviction and sentence in order to evade the AEDPA's one-year statute of limitations), *C.O.A. denied*, No. 14-50689 (5th Cir. Apr. 10, 2015).

(5th Cir. 2003)), which was 30 days after the Dallas Court of Appeals affirmed the judgments, or Monday, March 21, 2011, *see Flores v. Quarterman*, 467 F.3d 484, 485–86 (5th Cir. 2006); *Roberts*, 319 F.3d at 694 (5th Cir. 2003); TEX. R. APP. P. 68.2; TEX. R. APP. P. 4.1(a).

Accordingly, a federal habeas application asserting the first eight grounds for relief asserted now was due to be filed no later than March 21, 2012, unless that deadline is equitably tolled or Crespin is relying on the narrow actual innocence gateway. Here, however, he neither presents rare and exceptional circumstances that justify equitable tolling as to these claim nor argues that he is factually innocent. As such, Crespin's first eight claims for relief are barred by the AEDPA's one-year statute of limitations.

<u>Claim 11 – Adjudication Order is Void</u>

Crespin argues that the Adjudication Order is void because there is no evidence to support that he violated state law by only registering as a sex offender once a year as opposed to every 90 days. *See, e.g.,* Dkt. No. 1 at 11. As Crespin admits, his challenge to the 90-day registration requirement was not squarely presented to the CCA. *See, e.g.,* Dkt. No. 56 at 11 ("Mr. Crespin has no problem admitting that his court-appointed appellate counsel failed to specifically raise on direct appeal that there was insufficient evidence to support that [Crespin] violated his probation by failing to comply with Texas'[s] sex offender registration laws because he was at all times only required to verify his registration once a year."); *see also* Dkt. No. 55 at 6-7 (summarizing Respondent's position that this claim is unexhausted).

-9-

Crespin believes, however, that because, on direct appeal, he argued that there was not sufficient evidence to show that he was notified that he had to register as a sex offender, his specific challenge to the 90-day registration requirement is exhausted. *See* Dkt. No. 51 at 5-6; Dkt. No. 56 at 11 (citing *Bledsue v. Johnson*, 188 F.3d 250 (5th Cir. 1999)).

On direct appeal, the Dallas Court of Appeals affirmed based on its finding that the evidence – specifically, Detective Younger's testimony that Crespin "did not comply with the sex offender registration requirements," after Crespin admitted to Younger that "he knew about and understood the registration requirements" – was "sufficient to support the trial court's finding that [Crespin] failed to register as a sex offender." *Crespin*, 2013 WL 1277871, at *2-*3. But Crespin's eleventh claim is not a challenge to the sufficiency of the evidence, which included a finding that he failed to comply with the 90-day registration requirement. It is instead a challenge to that requirement itself or its applicability to Crespin. *See, e.g.,* Dkt. No. 1 at 11 ("There was never any [requirement] that Petitioner was required by state law to register every 90 days. The motion to revoke and resulting Judgments are [invalid] to allege and determine that Petitioner failed to obey the laws of the state of Texas in failing to register every 90 days, or on August 25, 2011.").

Crespin has failed therefore to fairly present this claim to the CCA, as the highest available state court for review, which means that he has failed to properly exhaust state court remedies as to this claim. *See Campbell v. Dretke*, 117 F. App'x 946, 957 (5th Cir. 2004) ("'The exhaustion requirement is satisfied when the substance of

the habeas claim has been fairly presented to the highest state court' so that a state court has had a 'fair opportunity to apply controlling legal principles to the facts bearing on the petitioner's constitutional claim.'" (quoting *Soffar v. Dretke*, 368 F.3d 441, 465 (5th Cir. 2004))); *see* 28 U.S.C. § 2254(b)(1)(A); *see also Nickleson v. Stephens*, 803 F.3d 748, 753 (5th Cir. 2015) ("The exhaustion doctrine demands more than allusions in state court to facts or legal issues that might be comprehended within a later federal habeas petition. The exhaustion doctrine is based on comity between state and federal courts, respect for the integrity of state court procedures, and 'a desire to protect the state courts' role in the enforcement of federal law.'" (quoting *Castille v. Peoples*, 489 U.S. 346, 349 (1989) (in turn quoting *Rose v. Lundy*, 455 U.S. 509, 518 (1982)))).

Unexhausted claims should be found procedurally barred if "the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred." *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991).

Texas law precludes successive habeas claims except in narrow circumstances. *See* TEX. CODE CRIM. PROC. ANN. art. 11.071, § 5. This is a codification of the judicially created Texas abuse-of-the-writ doctrine. *See Barrientes v. Johnson*, 221 F.3d 741, 759 n.10 (5th Cir. 2000). Under this state law, a habeas petitioner is procedurally barred from returning to the Texas courts to exhaust his claims unless the petitioner presents a factual or legal basis for a claim that was previously unavailable or shows that, but for a violation of the United States Constitution, no rational juror would have found

-11-

for the State. *See id.* at 758 n.9. Therefore, unexhausted claims that could not make the showing required by this state law would be considered procedurally barred from review on the merits in this Court unless an exception is shown. *See Beazley v. Johnson*, 242 F.3d 248, 264 (5th Cir. 2001).

An exception to this bar allows federal habeas review if a petitioner "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750.

Claim 11 is procedurally barred because Crespin has not shown that this claim would be allowed in a subsequent habeas proceeding in state court under Texas law. Nor has he asserted the "fundamental miscarriage of justice" exception to procedural bar.

Ineffective assistance of counsel [Claims 9 and 10]

The only two claims that this Court should consider on their merits are Crespin's assertions that his counsel at the revocation hearing was constitutionally ineffective for failing to object to the allegation that Crespin was required to register every 90 days and that his counsel on appeal failed to render constitutionally-effective assistance by failing to challenge that requirement.

Where a state court has already rejected a claim on the merits, a federal court may grant habeas relief on that claim only if the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court decision is "contrary" to clearly established federal law if "it relies on legal rules that directly conflict with prior holdings of the Supreme Court or if it reaches a different conclusion than the Supreme Court on materially indistinguishable facts." *Busby*, 359 F.3d at 713; *see also Lopez v. Smith*, 574 U.S. ___, 135 S. Ct. 1, 2 (2014) (per curiam) ("We have emphasized, time and time again, that the AEDPA prohibits the federal courts of appeals from relying on their own precedent to conclude that a particular constitutional principle is 'clearly established.'" (citation omitted)).

A decision constitutes an "unreasonable application" of clearly established federal law if "the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). "For purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law.... A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citations and internal quotation marks omitted). "Under § 2254(d), a habeas court must determine what arguments or theories supported or ... could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists

could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id.* at 102 (internal quotation marks omitted).

As to Section 2254(d)(2)'s requirement that a petitioner show that the state court adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," the Supreme Court has explained that "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance" and that federal habeas relief is precluded even where the state court's factual determination is debatable. *Wood v. Allen*, 558 U.S. 290, 301, 303 (2010). Under this standard, "it is not enough to show that a state court's decision was incorrect or erroneous. Rather, a petitioner must show that the decision was objectively unreasonable, a substantially higher threshold requiring the petitioner to show that a reasonable factfinder must conclude that the state court's determination of the facts was unreasonable." *Batchelor v. Cain*, 682 F.3d 400, 405 (5th Cir. 2012) (brackets and internal quotation marks omitted).

The Court must presume that a state court's factual determinations are correct and can find those factual findings unreasonable only where the petitioner "rebut[s] the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e) (1); *Gardner v. Johnson*, 247 F.3d 551, 560 (5th Cir. 2001). This presumption applies not only to explicit findings of fact but also "to those unarticulated findings which are necessary to the state court's conclusions of mixed law and fact." *Valdez v. Cockrell*, 274 F.3d 941, 948 n.11 (5th Cir. 2001); *see also Harrington*, 562 U.S. at 98 ("[D]etermining

whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning."); *Pondexter v. Dretke*, 346 F.3d 142, 148 (5th Cir. 2003) ("a federal habeas court is authorized by Section 2254(d) to review only a state court's 'decision,' and not the written opinion explaining that decision" (quoting *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002) (en banc))).

In sum, Section 2254 creates a "highly deferential standard for evaluating state court rulings, which demands that state-court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002). To overcome this standard, a petitioner must show that "there was no reasonable basis for the state court to deny relief." *Harrington*, 562 U.S. at 98.

The Court reviews Sixth Amendment claims concerning the alleged ineffective assistance of trial counsel under the two-prong test established in *Strickland v. Washington*, 466 U.S. 668 (1984), under which a habeas petitioner must demonstrate that the performance of his attorney fell below an objective standard of reasonableness, *see id.* at 687-88. To be cognizable under *Strickland*, trial counsel's error must be "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. The petitioner also must prove that he was prejudiced by his attorney's substandard performance. *See id.* at 687, 692. "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687.

[B]ecause of the risk that hindsight bias will cloud a court's review of

counsel's trial strategy, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy."

*Feldman v. Thaler*, 695 F.3d 372, 378 (5th Cir. 2012) (quoting *Strickland*, 466 U.S. at 689).

"The Supreme Court has admonished courts reviewing a state court's denial of habeas relief under AEDPA that they are required not simply to give [the] attorney's the benefit of the doubt, ... but to affirmatively entertain the range of possible reasons [petitioner's] counsel may have had for proceeding as they did." *Clark v. Thaler*, 673 F.3d 410, 421 (5th Cir. 2012) (internal quotation marks omitted). Therefore, on habeas review under AEDPA, "if there is any 'reasonable argument that counsel satisfied *Strickland*'s deferential standard,' the state court's denial must be upheld." *Rhoades v. Davis*, 852 F.3d 422, 432 (5th Cir. 2017) (quoting *Harrington*, 562 U.S. at 105).

To demonstrate prejudice, a habeas petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Thus, "the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently." *Harrington*, 562 U.S. at 111. "Instead, *Strickland* asks whether it is 'reasonably likely' the result would have been different," which "does not require a showing that counsel's actions 'more likely than not altered

-16-

the outcome,' but the difference between *Strickland*'s prejudice standard and a more-probable-than-not standard is slight and matters 'only in the rarest case." *Id.* at 111-12 (quoting *Strickland*, 466 U.S. at 693, 696, 697). "The likelihood of a different result must be substantial, not just conceivable." *Harrington*, 562 U.S. at 112.

Ineffective-assistance-of-counsel claims are considered mixed questions of law and fact and are therefore analyzed under the "unreasonable application" standard of 28 U.S.C. § 2254(d)(1). *See Gregory v. Thaler*, 601 F.3d 347, 351 (5th Cir. 2010). Where, as here, the state court adjudicated ineffective-assistance claims on the merits, this Court must review a habeas petitioner's claims under the "doubly deferential" standards of both *Strickland* and Section 2254(d). *Cullen v. Pinholster*, 563 U.S. 170, 190, 202 (2011); *see also Rhoades*, 852 F.3d at 434 ("Our federal habeas review of a state court's denial of an ineffective-assistance-of-counsel claim is 'doubly deferential' because we take a highly deferential look at counsel's performance through the deferential lens of § 2254(d)." (citation omitted)).

In such cases, the "pivotal question" for this Court is not "whether defense counsel's performance fell below *Strickland*'s standard"; it is "whether the state court's application of the *Strickland* standard was unreasonable." *Harrington*, 562 U.S. at 101; *see also id.* at 105 ("Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." (internal quotation marks and citations omitted)).

In other words, AEDPA does not permit a *de novo* review of state counsel's

-17-

conduct in these claims under *Strickland*. *See id.* at 101-02. Instead, on federal habeas review of a claim that was fully adjudicated in state court, the state court's determination is granted "a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Id.* at 101; *see also Woods v. Etherton*, 578 U.S. ____, 136 S. Ct. 1149, 1151 (2016) (per curiam) (explaining that federal habeas review of ineffective-assistance-of-counsel claims is "doubly deferential" "because counsel is 'strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment'"; therefore, "federal courts are to afford 'both the state court and the defense attorney the benefit of the doubt'" (quoting *Burt*, 134 S. Ct. at 17, 13)).

As to the Sixth Amendment violations Crespin has raised, the state trial court made the following findings:

> Applicant's assertion that adjudication counsel should have challenged the 90-day registration requirement as an ex post facto violation is unsupported. The relevant facts are set out in the Court of Appeals' opinion. The mistake was a result of improper paperwork rather than a change in law and thus ex post facto is not applicable. Further, even if this basis is disregarded, the trial court found that five other alleged violations of probation were true.
>
> As previously discussed, this prosecution was not barred by the statute of limitations. Thus, counsel on adjudication was not ineffective.
>
> There was no objection to the 90-day registration requirement. Because there was no objection, appellate counsel could not raise it on appeal. Further, as previously noted, the trial court found that Applicant violated six terms of his probation. A finding of one violation is sufficient to adjudicate.

Dkt. No. 19-18 at 120-21.

The undersigned cannot conclude that these determinations amounts "to an

-18-

unreasonable application of *Strickland* or an unreasonable determination of the evidence." *Garza v. Stephens*, 738 F.3d 669, 680 (5th Cir. 2013) (citing 28 U.S.C. § 2254(d)(1)-(2)). Accordingly, Claims 9 and 10 should be denied.

## Recommendation

The Court should deny the application for writ of habeas corpus.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: May 11, 2017

_____

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE